**LEBANON CHEMICAL CORP.,**
**Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 377–82L.**

United States Claims Court.

Aug. 16, 1984.

As Clarified Oct. 26, 1984.

See also, 2 Cl.Ct. 108.

for the use of pesticides can be suspended or cancelled. Affected registrants are to be indemnified for the cost of the product not to exceed the fair market value. 7 U.S.C. § 136m. The agency is to establish procedures for the storage, transportation, and disposal of cancelled pesticides; however, as contrasted with the indemnity provisions, there are no statutory provisions for government reimbursement to registrants or owners of pesticides of their costs associated with these procedures except that, under appropriate circumstances, the government shall accept stocks of pesticides at convenient locations for disposal by the agency itself. *See* 7 U.S.C. § 136q(a); S.Rep. No. 838, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 3993, 4020; S.Rep. No. 970, 92nd Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4092, 4126-27. There is no provision for governmental payment of disposal costs, and the legislative history manifests an intent that these charges not be incurred by the government. H.Conf.Rep. No. 1560, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2043, 2065.

Pursuant to the Act, the Environmental Protection Agency (EPA) issued an emergency order suspending registrations for specified uses of pesticides containing silvex, and issued a notice of intent to cancel the registrations for those substances. The emergency suspension order was effective immediately and included a prohibition against the sale or use of existing stocks. Under the FIFRA, the registrants are legally responsible only for the product in their possession, not for the products in the possession of their customers. Responsibility for coordinating disposal of products in possession of such customers rests with the agency.

Robert L. Ackerly, Washington, D.C., Kenneth J. Ingram and Sachs, Greenebaum & Tayler, Washington, D.C., of counsel, for plaintiff.

Diane L. Donley, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant.

## OPINION

YANNELLO, Judge.

This case has its genesis in actions taken under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA or the Act). 7 U.S.C. §§ 136 *et seq.* (1982). FIFRA contemplates a system whereby registrations

Plaintiff held registrations for silvex pesticides and, pursuant to 7 U.S.C. § 136d(b), initiated an administrative challenge to defendant's actions.[1] In the course of that proceeding, the parties (plaintiff and Ste-

---

1. These proceedings are described in 7 U.S.C. § 136d(d), and include a hearing before an Administrative Law Judge.

ven Jellinek, then Assistant Administrator for Pesticides and Toxic Substances for the agency) entered into an "Agreement Regarding Suspension and Cancellation of Certain Silvex Pesticides," dated June 21, 1979.[2]

As is pertinent to this action, the agreement consisted of two parts. First, it was agreed that plaintiff's registrations be cancelled and that the administrative proceedings be terminated (by virtue of plaintiff's acceptance of the Administrator's decision to suspend and terminate). With the completion of the administrative proceeding, plaintiff was entitled to submit its request for indemnification pursuant to the agreement and the statute.[3]

Second, the agreement prescribed a procedure by which the agency could fulfill its statutory obligation under 7 U.S.C. § 136q(a) of FIFRA, to—

... accept at convenient locations for safe disposal a pesticide the registration of which is cancelled under section 6(c) if requested by the owner of the pesticide.

The agreement contained a statement in the general nature of a preamble, noting that the agency was entering into the agreement and obtaining the registrant's cooperation in order to facilitate the agency's administration of the statute.

The procedure agreed to was essentially two-fold: the plaintiff agreed to use its best efforts to retrieve the silvex pesticides from its customers (an obligation not otherwise devolving to the plaintiff under the statute), and the agency agreed to designate sites to which the pesticides could be transported for disposal within eight months of the date of the agreement.

Plaintiff complied with the agreement, and acquired possession of quantities of pesticides from its customers.

The agency attempted to comply but its initial requests for proposals (to contractors which might handle the disposal at approved sites) was apparently unsuccessful. A second request for proposal was issued in February and March 1980—some eight months after the date of the agreement. *See, e.g.,* 45 F.Reg. 60,483 at 60,484 (1980). EPA was unable to designate a disposal site until September 12, 1980, some 15 months after the agreement. Plaintiff's pesticides were actually accepted for disposal in late 1980.[4]

Plaintiff here seeks to recover the costs incurred in storing its pesticides, and those retrieved from its customers, from February 1980 (the time at which EPA was obligated to specify the disposal sites) to the time when such sites were designated and plaintiff's stocks were actually disposed of.

Defendant argues that relief is not available for a variety of reasons: (1) that the official executing the agreement did not have authority to bind the government to a contract; (2) that there was no implied-in-fact contract to pay for such storage costs, inasmuch as there was no meeting of the minds and inasmuch as the government did not benefit (or receive consideration) from the agreement; (3) that FIFRA does not envision any payment for storage costs and thus there was no basis for such a contract in the first instance; and (4) that the government, in the course of its administration of FIFRA, including participation in the administrative proceedings in issue,

---

**2.** The agency also entered into similar agreements with 17 other silvex registrants.

**3.** The agency and plaintiff subsequently agreed on the amount of indemnification, but the agency was without appropriations to implement payment. Accordingly, plaintiff filed suit in this court and, pursuant to the provisions of FIFRA and an audit conducted on behalf of the Department of Justice, the parties entered into a Stipulation for Entry of Judgment with respect to the amount of indemnification to which plaintiff was entitled.

The court dismissed plaintiff's petition with respect to the costs sought in this action, but such dismissal was without prejudice to plaintiff's reassertion of the claims "on grounds other than [FIFRA]." The instant suit was initiated on July 27, 1982, and an amended complaint was filed on October 8, 1982.

**4.** While the delay may be understandable, the agency's agreement was not limited to the use of its best efforts but was an unqualified promise to designate disposal sites within the stated period of eight months.

was acting in its sovereign capacity and is not, therefore, subject to suit in connection with these activities.

## DISCUSSION

### 1. Authority

With respect to the authority of the individual signing the agreement, the government's arguments are not germane. The government relies on the absence of the person's authority to act as a contracting officer in the formal sense, specifically the authority to bind the government in an agreement to pay for the procurement of goods, services, or property. The agreement before us is clearly not a contract for the procurement of goods, services, or property.

Rather, the agreement in issue is in the nature of a settlement of adjudicatory proceedings. Such agreements are common, for example, in this court, where the Attorney General (or his delegate, if appropriate) may enter into a binding agreement with the plaintiff. These individuals need not be contracting officers, nor need they have authority to bind the government in the procurement (by or on behalf of the Department of Justice) of various goods, services, or property.

■ The only question requiring analysis here is whether Mr. Jellinek possessed authority to bind the agency, in the course of (1) the administrative proceedings, and/or (2) the administration of the statute. The government has acknowledged that Mr. Jellinek possessed the authority to execute an agreement to end the administrative proceedings. *See* defendant's response and cross-motion in a similar case, *The Andersons v. United States*, No. 540–82L, filed September 9, 1983, at page 21, lines 1 to 4; *see also Chevron v. United States*, No. 355–83L, Transcript of Oral Argument filed on June 8, 1984, page 14 at lines 10–12.

Accordingly, in the context of the pending dispositive motions, it is found that Mr. Jellinek was authorized to enter into the contract in issue, as part of the settlement of administrative proceedings and in furtherance of the agency's administration of the statute.

### 2. Contract Express or Implied [5]

### 3. Payment of Storage Costs

■ Plaintiff contends that the settlement agreement obligated defendant to pay the storage and related costs incurred by plaintiff for the period beyond the date by which defendant was to specify disposal sites.

The settlement agreement is an express contract reached in the course of resolving the administrative disputes and as part of the agency's overall administration of the statute (including suspension and cancellation of registrations). Whereas, with respect to disposal, the statute merely provides that the government accept supplies of products at designated disposal sites, the agreement expressly obligated the government to designate the disposal sites within a stated period of time—eight months.

There were no express terms in this contract which obligated the defendant to pay the cost of storage for any period of time. (Indeed, as defendant contends, the agency was not authorized by statute to incur such expense).

Nor can such obligation be found to have been implied in fact. Plaintiff points to no evidence whatever of any written or oral manifestations of any explicit agreement by the government that, if storage continued longer than anticipated, the government would pay such costs. Indeed, there is *no* evidence cited to indicate that either party expressly addressed the possibility that defendant would not fulfill its obligation to designate disposal sites within the time stated.

Nonetheless, the government's failure to provide the designation of disposal sites in a timely fashion, as agreed, resulted in plaintiff's storage of the products for an extended period of time. In short, the stor-

---

**5.** Count I of the amended petition asserts a claim apparently based on an express contract and, in the alternative, Count III asserts a contract implied-in-fact. *See also* footnote 7, *infra.*

age costs now complained of by plaintiff were incurred as a result of the defendant's failure to fulfill, or breach of, its contractual obligations. While finding no basis for recovery in plaintiff's theory of a contract implied-in-fact, this court recognizes the plaintiff's claim to recover extended storage and related costs as cognizable under a theory of breach of the express contract or settlement agreement, as is discussed further below.[6]

It is clear that both parties intended a two-fold exchange: plaintiff would retrieve its pesticides from its customers and defendant would advise plaintiff within a stated period of time of designated disposal sites to which the accumulated stocks could be transported. Contrary to the government's assertion, it received a number of benefits from the agreement, including the cessation of further administrative proceedings, acceptance of the cancellation of the registrations, and the retrieval by plaintiff of other existing stocks of the pesticides.

■ Moreover, contrary to the government's contentions, a contract in which a party (here the plaintiff) is obligated to use its best efforts to obtain a stated result is not a contract in which the party is a volunteer. Rather, the party is obligated to use its best efforts to achieve the stated result; here plaintiff did perform this obligation with results which were fully satisfactory.

With respect to plaintiff's promise to attempt to retrieve products in the possession of its customers, the parties noted in the agreement that plaintiff was under no legal duty to undertake this performance. Rather, its agreement to do so produced a process envisioned by both parties as facilitating the agency's administration of FIFRA generally. (Not only would such an agreement be within the agency's administrative authority generally but, in the circumstances presented here, would serve to advance the interests of the agency and the public in connection with the statutory mandate).

When the agency failed to fulfill the terms of its agreement to designate disposal sites, the plaintiff might have proceeded in any of the ways available to a party wishing to enforce a contract generally or, as here, a settlement agreement arrived at in the course of adjudicatory proceedings. These include repudiation of the contract, suit to enforce the contract, or suit for breach of contract. Plaintiff here appropriately initiated suit to recover the damages resulting from the government's breach, as is its right.[7]

While neither FIFRA nor the agreement entered into by the parties expressly contemplates the payment of storage costs, when those costs are incurred as the result of the government's failure to fulfill its contract, then the storage costs are awardable as damages for the government's breach of contract. Such an award is not precluded for any of the reasons urged by defendant.

Defendant argues that the substance of the foregoing discussion is not equally applicable to the totality of plaintiff's claim

6. The parties' cross-dispositive motions treat only plaintiff's Count III, based on a contract implied-in-fact re: storage and related costs. The court's conclusions herein with respect to contracts express and implied-in-fact are inextricably entwined, and, in the interest of judicial economy, it is appropriate to complete this discussion even to the extent that it may more properly relate to Count I of the petition re: an express contract and its impact on storage costs. This is particularly appropriate where, as here, the parties' briefs appear to raise comprehensive arguments concerning the nature of the settlement agreement relevant to both Counts I and III.

However, recognizing that the defendant may have additional arguments to present with respect to the express contract and Count I (particularly insofar as resulting breach and related damages may be concerned), the court hereby affords defendant the opportunity to seek reconsideration of this Opinion within 20 days of its issuance and to raise any new arguments not presented in the pending motions and briefs.

7. The plaintiff clearly had no reason to repudiate the agreement under which it had already performed. Similarly, at the expiration of the 8-month period, the government was seeking disposal contracts and might well not have been able to accelerate this process even had a court ordered it to do so.

for storage costs. As the discussion herein makes clear, the costs which plaintiff incurred for storage related to both (1) stock initially in its possession as well as (2) stock retrieved from customers under the agreement. The government urges that the costs related to plaintiff's own product would have been incurred in any event—until the government in some indefinite time period designated a disposal site under the terms of the statute itself; only the additional costs incurred with respect to stocks retrieved from its customers might be directly attributed to the government's breach of its agreement.

On the other hand, it might be urged that plaintiff undertook its obligations under the agreement in return for the timely designation of disposal sites with respect to all stocks. Moreover, it may have elected to continue to pursue the administrative processes in connection with the cancellation of its registrations for its product; indeed such cancellation was agreed to as part of the extensive agreement.

On balance, and on the basis of the motion presented to the court and defendant's response thereto, it is concluded in this connection that plaintiff should recover all costs associated with storage beyond the 8-month period stated in the agreement, based on the government's breach thereof.

### 4. Sovereign Acts

■ The government's administration of FIFRA may be part of its sovereign role as prescribed by Congress. However, if as part of and in order to facilitate that administration, the government enters into agreements (or contracts), as here, then such agreements are enforceable under the law generally. Violations of such agreements are not exempt from remedy merely because the agreements also facilitate a larger scheme of action by the sovereign.

As an example, the agency solicited proposals to dispose of the pesticides accumulated by plaintiff. Disposal is part of its statutory duty. 7 U.S.C. § 136q. Were a contractor to file a claim under a disposal contract, the government could not seek immunity by pointing to the fact that the contracts were entered into pursuant to the government's duties as the sovereign. Nor are all defense contracts deemed exempt merely because they were entered into by the government as part of its sovereign duty to protect the national defense.

■ Rather, the doctrine of sovereign acts merely provides that, where performance of a pre-existing contract is rendered impossible by virtue of an intervening event relating to a discharge of sovereign responsibility, the government, as a party to the contract, cannot be held liable for the acts of the sovereign. For a discussion of applicable cases in the context of a Congressional Reference suit, *see Town of Kure Beach v. United States*, 168 Ct.Cl. 597, 612 *et seq.* (1964). There is no allegation articulated here by defendant that its failure to fulfill its promise to designate disposal sites within a stated period of time was in any way due to government acts in a sovereign capacity.

### 5. Quantum

Plaintiff's motion notes that the amount of the costs claimed for storage and related expenses is available for review (and audit) by the government and, accordingly, this matter must be scheduled for further proceedings as appropriate (including an opportunity for the parties to review the costs and engage in reasonable settlement negotiations).

### CONCLUSION OF LAW

For the foregoing reasons, the plaintiff's motion for partial summary judgment (on liability) as to its (alternative) Counts III and I of the amended complaint is GRANTED, noting also the terms of footnote 7 of this opinion; and defendant's cross-motion is DENIED.

The plaintiff may recover the costs incurred in connection with storage and related items beyond the 8-month period provided in the agreement (and until actual disposal sites were designated by the agency); and the parties are directed to confer and

to advise the court within 30 days as to desired further proceedings in connection with computation of damages.

Additionally, the parties are to advise the court within 30 days as to desired further proceedings relating to Counts II and IV of the amended petition raising issues of transportation and related costs, which have not been addressed by the parties to date.[8]

---

8. *See also The Andersons v. United States, supra,* in which motions are presently pending before this court on the transportation issue, and in which defendant's counsel (but not that of plaintiff) is the same as in the instant case. Argument will be held on the motions in *The Andersons* on October 4, 1984, at 3:00 p.m. If counsel in the instant case so desire, they may file similar motions within or shortly after the 30-day period for advice noted herein, without supporting briefs, accompanied by a motion for leave to orally present their arguments in this connection at the time of the argument scheduled in *The Andersons.*